IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LOLETTA THOMAS, an individual; )
and MATTHEW J. THOMAS, a minor, )
by and through LOLETTA THOMAS, )
parent and natural guardian of )
MATTHEW J. THOMAS, )
)
      Plaintiffs, )
)
v. )    2:04cv1661
)    Electronic Filing
THE BOARD OF EDUCATION OF )
THE WEST GREENE SCHOOL )
DISTRICT; WEST GREENE SCHOOL )
DISTRICT; and JOHN CROUSE, )
an individual, )
)
      Defendant. )

## OPINION

Plaintiffs commenced this civil rights action seeking redress for the infliction of corporal punishment in a class room setting. Presently before the court are motions for summary judgement by the Board of Education of West Green School District ("the Board"), the West Green School District ("the District"), and John Crouse ("Crouse"). For the reasons set forth below, the motions will be granted.

Federal Rule of Civil Procedure 56 (c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. National State Bank v. National Reserve Bank, 979 F.2d 1579, 1582 (3d

Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a <u>genuine issue for trial</u>," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. <u>Matsushita Electric Industrial Corp. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986) (<u>quoting</u> Fed.R.Civ.P. 56 (a), (e)) (emphasis in <u>Matsushita</u>). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989). Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." <u>Harter v. GAF Corp.</u>, 967 F.2d 846 (3d Cir. 1992). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. <u>Robertson v. Allied Signal, Inc.</u>, 914 F.2d 360, 382-83 n.12 (3d Cir. 1990). If the non-moving party's evidence merely is colorable or lacks sufficient probative force summary judgment must be granted. <u>Anderson</u>, 477 U.S. at 249-50; <u>see</u> <u>also</u> <u>Big Apple BMW, Inc. v. BMW of North America</u>, 974 F.2d 1358, 1362 (3d Cir. 1992), <u>cert.</u> <u>denied</u>, 113 S.Ct. 1262 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

The record as read in the light most favorable to plaintiffs establishes the background set forth below. On February 6, 2003, at the start of Crouse's history class, Matthew Thomas was asked to present his homework. Matthew said he had left it in his locker, was given an opportunity to retrieve it, and returned to class after he was unable to find it. Upon returning, Crouse questioned Matthew about his homework and Matthew informed Crouse that he could not find it. "At that point, Crouse approached Matthew, who was only one or two steps inside the classroom door, and forcefully punched Matthew, with a closed fist, in the upper chest/collarbone area. This strike knocked Matthew backwards until he was able to regain his

balance against a wall." Plaintiffs' Brief in Opposition at 4. Matthew smelled the odor of alcohol on Crouse's breath during the incident. In interviews with students conducted after the incident, there was consensus that Crouse struck Matthew forcefully enough "that the students were able to hear the impact from their seats" and that "Mr. Crouse hit Matt hard enough to make him 'jerk back.'" Id. at 4. Plaintiffs maintain that Crouse "deprived Matthew of his liberty without due process in violation of the Fourteenth Amendment of the United States Constitution." Id. At 2

Plaintiffs also have presented a § 1983 claim against the Board and the District. They contend that both the District and the Board should have been or were aware of Crouse's propensity to strike students, and that by failing to reign Crouse in they in effect condoned Crouse's behavior. This, plaintiffs contend, places responsibility on the Board and District for deprivation of Matthew's constitutional rights.

In support of this claim, plaintiffs present evidence of an event twenty years ago in which Crouse forced a student into a chair after the student refused to sit down. The incident resulted in a meeting between the student, his parents, and the principal serving at that time, which purportedly imputes knowledge of the incident to the Board and the District.

Plaintiffs assert that Matthew's liberty interest under the Due Process Clause of the Fourteenth Amendment was infringed by Crouse's actions. The Supreme Court has promulgated a standard for evaluating whether such a violation has taken place. "The substantive component of the Due Process Clause is violated by [conduct of a state actor] when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." County of Sacramento v. Lewis, 523 U.S. 833 (U.S. 1998). The Court has observed that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 849.

Lewis did not announce a standard that was foreign to civil rights cases. Long before Lewis, Judge Friendly, in Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973), a prison abuse case, elaborated on this standard:

> In determining whether the constitutional line has been crossed, a court must look

3

> to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

Id at 1033.

The circuit courts have further elucidated this standard as it applies to corporal punishment in schools. The seminal case is Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980). In Hall, the court recognized the need for an exacting standard. It opined: "the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Id. at 613. It further cautioned that "[n]ot every violation of state tort and criminal assault laws will be a violation of this constitutional right ...." Id. This standard is now accepted by the overwhelming majority of the federal circuit courts. See e.g. Johnson by Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246 (2d Cir. 2001); Neal by Neal v. Fulton County Bd. of Educ., 229 F.3d 1069 (11th Cir. 2000); Lillard v. Shelby County Bd. of Educ., 76 F.3d 716 (6th Cir. 1996); Wise v. Pea Ridge Sch. Dist., 855 F.2d 560 (6th Cir. 1988); Garciaby Garcia v. Miera, 817 F.2d 650 (10th Cir. 1987); Webb v. McCullough, 828 F.2d 1151 (6th Cir. 1987).

The leading case in the Third Circuit is Gottlieb v. Laurel Highlands Sch. Dist., 272 F.3d 168 (3d Cir. 2001). There, after considering the various related refinements of Hall, the court adopted the following four part test:

> a) Was there a pedagogical justification for the use of force?; b) Was the force utilized excessive to meet the legitimate objective in this situation?; c) Was the force applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?; and d) Was there a serious injury?

Gottlieb, 272 F.3d at 173. The Gottleib court conducted its inquiry as an elements test, concluding that the plaintiff's inability to satisfy any particular factor entitled the defendant to summary judgment. Out of an abundance of caution, however, this court will apply the factors as

4

a balancing test.

In order for plaintiffs to prevail, then, they must have sufficient evidence to convince the fact finder that far more than an ordinary state-law tort occurred. In order for Crouse' closed-fist strike to rise to the level of a deprivation of substantive due process, plaintiffs must show that the strike was such an abuse of power that it shocks the judicial conscience. In accordance with the test described above, this consists of demonstrating that: (1) there was no pedagogical justification for the use of force; (2) the force was excessive; (3) the primary motive for the use of force was harm, as opposed to a legitimate pedagogical objective; and (4) serious injury resulted. In other words, plaintiffs must be able to convince the fact finder that consideration of these four factors compels the conclusion that the strike "amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Hall, 621 F.2d at 613.

As to the first prong of the four part test, the Gottlieb court explained that when force is used in the scholastic setting, "[a]t the very least, the force must be capable of being construed as an attempt to serve pedagogical objectives." Gottlieb 272 F.3d at 174. The question here is merely whether a plausible pedagogical motivation for the use of force existed, not whether the use of force was defensible. If the use of force can be understood as part of an attempt to accomplish some legitimate educational objective, such as discipline, classroom order, or learning itself, it is "capable of being construed as an attempt to serve pedagogical objectives." Id.

Here, the entire altercation transpired over a dispute concerning the preparation of homework. Homework was assigned and either not completed or mishandled. Homework serves as a fundamental pedagogical tool, and a student's failure to comply with an assignment is a pedagogical concern for the teacher. In addition, issues of general preparedness and discipline were raised by this situation. Regardless of whether the use of force to solve the problem was ill-advised or even extremely foolish, it would be impossible for a reasonable fact finder to conclude that it was incapable "of being construed as an attempt to serve pedagogical objectives." Id. at 174.

Although Crouse's strike clearly could be construed as having a pedagogical justification,

it could be perceived as excessive in spite of the legitimate objective. The parties advance two different versions of the event. Matthew maintains that he was struck, with a closed fist, immediately upon re-entering the classroom without his homework. Defendants maintains Matthew was only struck, with nothing more than a genteel backhanded flip, after "mouthing off" and displaying an obscene gesture. If the fact finder accepts the plaintiffs' version of events, it may be convinced that the level of force was excessive. This does not, however, by itself rescue plaintiffs from summary judgement since this fact by itself would not compel a finding of 'conscience shocking' behavior and is therefore not, in isolation, a material fact. As the Hall court reasoned: an act exhibiting "a merely careless or unwise excess of zeal" is not enough to elevate the act to constitutional dimensions. Hall, 621 F.2d at 613.

The third factor is whether the use of force can be found to be malicious or sadistic. In the instant context a malicious or sadistic use of force would primarily be intended to harm the student as opposed to intended to achieve some legitimate pedagogical goal. The Plaintiffs attempt to establish that the use of force was malicious through what is essentially a *res ipsa loquitur* argument; the closed-fist strike itself can be understood only as an attempt to harm Matthew.

The question is whether a reasonable fact finder could, on the basis of the strike itself, determine that Crouse primarily intended to harm Matthew. It is crucial to be clear on what the fact finder must determine here. It is not enough to determine that in some broad sense the defendant knew, or intended, that his action be harmful. The fact finder must determine that the actor primarily intended the action to be harmful, and that the primary reason for the use of force was to cause harm, not, for instance, to discipline or restore order.

Plaintiffs cite three purportedly analogous cases where the use of force was deemed extreme enough to justify a finding of malice by a reasonable fact finder. Each of these cases is inapposite.

In Garcia v. Miera, 817 F.2d 650, 658 (10th Cir. 1987), the court found summary judgement inappropriate where a "nine-year-old girl was held up by her ankles and hit several times with a split board of substantial size on the front of her legs until they bled -- supported by

evidence of a permanent scar" and where "with respect to the second beating, that the punishment was severe enough to cause pain for three weeks -- supported by pictures of the injured buttocks, an affidavit from an examining doctor that in his long experience he had not seen bruises like that from routine spankings, and an affidavit from an examining nurse that if a child had received this type of injury at home she would have reported it as child abuse." In the instant case there was only one blow, to a 12 year old boy, which was only powerful enough to cause him to "jerk back", but not to fall. There was no bleeding, no persistent serious bruising, and no relevant testimony from medical practitioners attesting to the severity of the impact of the strike.

In Metzger v. Osbeck, 841 F.2d 518, 519 (3d Cir. 1988), the court found summary judgement inappropriate where a teacher had placed the student in a choke-hold, applied enough pressure that the student had to stand on his toes, and maintained the pressure until the student passed out, fell to the floor, lacerated his lower lip, and fractured his teeth and nose. There, the use of force was not a mere glancing blow, but a choke-hold maintained long enough to cause the student to lose consciousness, with foreseeable and serious injuries resulting. Here, the degree of force was much less severe, and the prospect for serious injury, given its nature, was far more remote.

The final case cited by plaintiffs is Webb v. McCullough, 828 F.2d 1151 (6th Cir. 1987). There, the court found summary judgement inappropriate where during a school trip, the principal, upon discovering that the plaintiff had locked herself in a bathroom after being expelled from the trip, "slammed the door three or four times with his shoulder. The door finally gave way, knocking [the plaintiff] against the wall. [The principal] then thrust the door open again, and it struck [the plaintiff] again, throwing her to the floor. He then grabbed [the plaintiff] from the floor, threw her against the wall, and slapped her." Once again, the use of force is far more severe, and sustained for a longer time, than in the instant case. The plaintiff was struck three times, once by a heavy object that knocked her to the floor. In addition to the three blows, she was also thrown against a wall. And the fact that these events occurred outside of the usual school setting, where "the need for immediate disciplinary control is at its greatest," id. at 1159,

(citing N.J. v. T. L. O., 469 U.S. 325 (U.S. 1985)), seriously called into question the pedagogical justification for the force, and magnified the potential for outrage. An analogy to the present case cannot be sanctioned.

A far greater analogy exists to the following cases. In Gottlieb, the court found summary judgement appropriate where a principal had "pushed [a student's] shoulder with his hand, propelling her backwards into a door jam," causing her to sustain serious injury. The use of force was not pedagogically justified. The court, nevertheless found summary judgment to be appropriate. It explained that "[a] slight push is very different than the choke-hold applied in Metzger" and that the conduct of the principal, "although possibly tortious, does not give Gottlieb a constitutional cause of action. [The principal] placing his hand on a student's shoulders and moving her mere inches is not 'a brutal and inhumane abuse of official power literally shocking to the conscience'." Id. at 175.

In Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 719 (6th Cir. 1996), a soccer coach verbally abused a 14 year old female student and then "held her chin with one hand and slapped her across the face--a slap which was, [the teacher] told [the plaintiff's] mother, "perhaps harder than he meant." In upholding summary judgment, the court reasoned: "it is simply inconceivable that a single slap could shock the conscience. We do not quarrel with a suggestion that [the teacher's] actions were careless and unwise; but they fall far short of 'brutal,' or 'inhumane,' or any of the other adjectives employed to describe an act so vicious as to constitute a violation of substantive due process. ... While we do not mean to suggest that school systems should tolerate a teacher who slaps a student in anger, neither do we conclude that one slap, even if made for no legitimate purpose, rises to the level of a constitutional violation." Id.

Finally, in Gonzales v. Passino, 222 F. Supp.2d 1277, 1281 (D.N.M. 2002), the court granted summary judgment where, in response to the use of an epithet, the teacher "struck [the plaintiff] on the arm with the plastic bat" and later "pushed [the plaintiff] once, hard enough to make him stumble." The blow from the bat caused "[[the plaintiff's] elbow [to turn] red immediately after it was struck" and a "medical professional found '[t]enderness, faint bruising, min. (sic) swelling' on the arm" the following day. Although there was no pedagogical

justification for the use of force, the court reasoned that in these circumstances it "simply could not find that hitting [the plaintiff] once on the arm with a plastic bat, even hard, amounted to a 'brutal and inhumane abuse of official power' literally shocking the conscience".

In Gottlieb, Lillard, and Gonzales, summary judgement was appropriate because, essentially, the use of force could not be understood as "brutal" or "inhumane." Given the high threshold needed to sustain a constitutional violation, the strike as described by plaintiffs, a single punch to the shoulder hard enough to cause plaintiff to "jerk back," is not itself sufficient to permit a reasonable fact finder to make a finding of malice. Cosequently, the record does not contain a sufficient basis to support the third element needed for a constitutional violation under Gottlieb.

The final factor is whether serious injury resulted from the use of force. In terms of physical injury, plaintiffs complain of nothing more than minor bruising and tenderness. This very clearly does not rise to the level of serious injury. Compare Gonzales, 222 F. Supp.2d at 1282; see also Brown v. Ramsey, 121 F. Supp.2d 911, 920 (D. Va. 2000) (collecting cases where summary judgment was appropriate notwithstanding actual, minor physical injury).

In addition to the minor physical injuries, plaintiffs assert that Matthew sustained serious psychological injuries. The courts have never recognized, Brown, 121 F. Supp.2d at 923, but have not ruled out the proposition that psychological harm unaccompanied by serious physical injuries can be sufficient to satisfy the injury requirement. See Abeyta by & Through Martinez v. Chama Valley Indep. Sch. Dist. No. 19, 77 F.3d 1253, 1257 (10th Cir. 1996). At the very least, however, the degree of psychological harm would have to be severe to satisfy the injury requirement for a constitutional violation. Id. For example, in Brown, a diagnosis of post traumatic stress syndrome, allegedly triggered by the repeated use of a passive restraint technique on a ten year old autistic boy, was deemed insufficient. Brown, 121 F. Supp.2d at 923. And in Abeyta, the psychological pain caused by a teacher repeatedly and publicly referring to a twelve year old female student as "a prostitute" and his encouragement of her peers to join in the taunt, was also insufficient, notwithstanding that the teacher's actions were the subject of a severe rebuke from the court. Abeyta, 77 F.3d at 1258.

In the case at hand, the psychological injury identified by plaintiffs, which seems to be of a similar magnitude as that endured by the plaintiff in Abeyta, would probably not be sufficient. The court need not even reach this issue, however, because in order for such an injury to be even cognizable under the fourth factor, it must at least be proximately caused by "the attack." For instance, a student severely traumatized by a teacher who then developed a fear of teachers or suffered from recurrent nightmares, may very well be deemed to have suffered serious psychological injuries from the attack. Here, however, plaintiffs complain of no real direct psychological injury resulting from the attack itself, or even indirect psychological injuries resulting from the humiliation of the attack; instead, they point to psychological injuries that flowed from the aftermath of Matthew's response to the attack. Plaintiffs complain that Matthew was shunned, ostracized, and otherwise picked on by his fellow students, not because he was struck by Crouse, but because Crouse was later disciplined for striking him. The injury, then, was not caused by the attack itself, or by the other student's response to the attack, but by the actions of other students in response to plaintiffs' complaint to the school authorities. The causal connection between the original attack and the psychological injury Matthew allegedly suffered at the hands of his fellow students is far too tenuous to support a finding of proximate causation. It follows that such injuries cannot be used to satisfy the fourth prong of the Gottlieb test.

On balance, the four factors considered above do not supply a sufficient foundation to sustain the findings needed to establish a due process violation. The conduct in question simply does not rise to a constitutional level. Accordingly, Crouse is entitled to summary judgement.

II Board and District

Plaintiffs' due process claims against the District and the Board fail to survive for similar reasons. First and foremost, plaintiffs' failure to proffer competent evidence to support a finding that Crouse deprived Matthew of a constitutional right forecloses their ability to establish municipal liability against these defendants for the same conduct. See Brown v. Commonwealth of Pennsylvania Department of Health Emergency Medical Services Training Institute, 318 F.3d 473, 482 (3d Cir. 2003) (although a municipality can be found liable under § 1983 even when no

10

individual officer violated plaintiff's constitutional rights, "there still must be a violation of the plaintiff's constitutional rights."); Searles v. South Eastern Pennsylvania Transportation Authority, 990 F.2d 789, 794 (3d Cir. 1993) ("thus, we need not reach the issue of whether SEPTA could be held liable where, as here, we have concluded that no constitutional right was violated."). But even assuming for purposes of argument that the analysis set forth above is flawed, plaintiffs' attempt to burden the Board and the District with § 1983 liability fails for additional reasons as well.

Whether a municipal government may be held liable under §1983 is governed by the doctrine announced in Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). There, the Supreme Court held that liability against such an entity may not be established by the respondeat superior doctrine, but instead must be founded upon evidence indicating the government itself supported a violation of the plaintiff's constitutional rights. See Bielevicz v. Dubinon, 915 F.2d 845 (3d Cir. 1990). "Thus, municipal liability attaches only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Id. (quoting Monell, 436 U.S. at 694). In Stoneking v. Bradford Area School Dist., 882 F.2d 720 (3d Cir. 1989), the court applied this reasoning specifically to the school context and determined that, in order for the plaintiff to prevail against the Board and District, he must convince the fact finder that, with respect to this particular teacher, the District "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiffs] constitutional harm."

Proving a government policy or custom can be accomplished in a number of different ways. Bielevicz 915 F.2d at 849-50. "Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). Custom, in contrast, can be proven by demonstrating that a given course of conduct, although not specifically endorsed or authorized by state or local law, is so well-settled and permanent as virtually to constitute law. Id. (citing

11

Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir.) ("Custom may be established by proof of knowledge and acquiescence."), cert. denied, 42 U.S. 919 (1989)).

Here, it is undisputed that the District had in place a policy on corporal punishment designed to prevent exactly what happened in this case, and that the administration enforced this policy by investigating the incident at hand, and briefly suspending Crouse. Under these undisputed facts, proving that the district maintained an unconstitutional policy is not possible.

Plaintiffs essentially contend that Matthew's rights were violated as the result of an unconstitutional custom. To prove the existence of an unconstitutional custom, it is sufficient to establish "that policymakers were aware of similar conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [the plaintiff's] injury." Bielevicz, 915 F.2d at 851.

In attempting to demonstrate that the District and Board were aware of a pattern of behavior by Crouse that should have put them on notice of possible future constitutional violations, plaintiffs reference one instance, twenty years ago, when Crouse pushed a recalcitrant student into his chair after the student refused to comply with repeated requests to sit down. Plaintiffs present evidence, which is undisputed, that the then serving principal was aware of what happened. In addition to this incident plaintiffs also cite three incidents relating to the consumption or distribution of alcoholic beverages. These incidents, plaintiffs argue, demonstrate that the administration knew Crouse had a history of abusive behavior towards students.

The incidents involving alcohol are completely without relevance to the issue of whether the District and Board were aware of inappropriate corporal punishment by Crouse. Crouse' two "DUI"s were unrelated to any teacher/student conduct and the serving of alcohol to minors in the distant past has no logical connection to the use of physical force on students. Plaintiffs, then, produce only one relevant incident to establish that the administration knew that Crouse had a history of using physical force towards students or was deliberately indifferent to circumstances likely to result in such conduct.

Even if plaintiffs' description of the pushing incident is accurate, it would not serve to

place the administration on notice that Crouse had a propensity to infringe the civil liberties of his students. The pushing incident, evaluated by the standards just articulated, certainly does not rise to the level of a substantive due process violation, and so could not serve to warn the Board or District that the substantive due process rights of students were in jeopardy. Furthermore, even if it is assumed that pushing a student back in his chair is "a brutal and inhumane abuse of official power literally shocking to the conscience", one event, twenty years ago, does not establish a pattern or custom. As the plaintiffs have insufficient evidence to convince a reasonable fact finder that the Board or District either acquiesced in or condoned a pattern of abusive behavior on the part of Crouse, they cannot demonstrate that either of these defendants acted with deliberate disregard for the rights of students. Summary Judgment on behalf of the Board and District is appropriate.

In light of the dismissal of Plaintiffs' § 1983 claims, it is appropriate to consider whether supplemental jurisdiction over their remaining state law claim should be maintained. After dismissal of all federal claims, a district court may decline to exercise supplemental jurisdiction over any remaining state law claims if it finds that the parties will not be prejudiced and that the interests of judicial economy would be served. See 28 U.S.C. § 1367(c)(3); Stehney v. Perry, 101 F.3d 925, 939 (3d Cir.1996). "This decision is committed to the sound discretion of the district court." Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 444 (3d Cir.1997), cert. denied, 523 U.S. 1059 (1998).

Here, there does not appear to be any prejudice to Plaintiffs if jurisdiction over the state law claim is not retained. Pennsylvania has enacted a "savings statute." See 42 Pa. Cons. Stat. Ann. § 5103. Under this statute, plaintiffs are permitted to file a certified transcript of these proceedings in state court and "the date of institution of the federal suit [serves] as the state court filing date for statute of limitations purposes, thereby obviating any limitations problems caused by dismissal." Rashid v. Kite, 957 F. Supp. 70, 75 (E.D. Pa.1997); see also Weaver v. Marine Bank, 683 F.2d 744, 746 (3d Cir.1982); Bezpalko v. Gilfillan, Gilpin & Brehman, No. 97-4923, 1998 WL 321268, at *7 (E.D. Pa. June 17, 1998) ("In addition, because Pennsylvania law provides that matters dismissed by a federal court for lack of subject matter jurisdiction may be

refiled in the appropriate state court without regard to the limitations period, plaintiffs will not be prejudiced with respect to the applicable limitations period if they choose to refile their lawsuit."); Long v. National Football League, 870 F.Supp. 101, 106 (W.D. Pa.1994) ("However, Pennsylvania law provides a plaintiff may effect a transfer of an action that has been dismissed by a federal court for lack of jurisdiction. The statute of limitations for state law claims is tolled if a timely action has been filed in a federal court and dismissed."), aff'd, 66 F.3d 311 (3d Cir.1995).

Because the only remaining claim is governed exclusively by state law, and plaintiffs will suffer no prejudice in effectuating that claim in a proper state forum, the court will decline to exercise supplemental jurisdiction over plaintiffs' remaining state law claim, and dismiss it without prejudice.

*/s/ David Stewart Cercone*
David Stewart Cercone
United States District Judge

cc: Gary J. Ogg, Esquire
Bryan S. Neiderhiser, Esquire
Ogg, Cordes, Murphy & Ignelzi, LLP
245 Fort Pitt Boulevard
Pittsburgh, PA 15222

Michael L. Fitzpatrick, Esquire
Daniel F. LaCava, Esquire
The Daniel F. LaCava Law Firm
850 Washington Avenue
Carnegie, PA 15106

Marie Milie Jones, Esquire
Leah L. Roth, Esquire
Meyer Darragh Buckler Bebenek
 & Eck, P.L.L.C.
Suite 4850
U. S. Steel Tower
600 Grant Street
Pittsburgh, PA 15219